

**United States Department of Justice**

*United States Attorney*
*Southern District of West Virginia*

SEP 2 1 2017

TERESA L. DEPPNER, CLERK
U.S. District Court
Southern District of West Virginia

*Robert C. Byrd United States Courthouse*
*300 Virginia Street, East*
*Suite 4000*
*Charleston, WV 25301*
*1-800-659-8726*

*Mailing Address*
*Post Office Box 1713*
*Charleston, WV 25326*
*304-345-2200*
*FAX: 304-347-5104*

May 24, 2017

Lisa Green, Esquire
P.O. Box 506
Shepherdstown, WV 25443

      Re:  United States v. Antoine E. Skaff

Dear Ms. Green:

    This will confirm our conversations with regard to your client, Antoine E. Skaff, D.D.S.(hereinafter "Dr. Skaff").  As a result of these conversations, it is agreed by and between the United States and Dr. Skaff as follows:

    1.  **CHARGING AGREEMENT.**  Dr. Skaff agrees to waive his right pursuant to Rule 7 of the Federal Rules of Criminal Procedure to be charged by indictment and will consent to the filing of a single-count information to be filed in the United States District Court for the Southern District of West Virginia, a copy of which is attached hereto as "Plea Agreement Exhibit A."

    2.  **RESOLUTION OF CHARGES.**  Dr. Skaff will plead guilty to a violation of 18 U.S.C. § 1347 (health care fraud) as charged in said information.

    3.  **MAXIMUM POTENTIAL PENALTY.**  The maximum penalty to which Dr. Skaff will be exposed by virtue of this guilty plea is as follows:

        (a)  Imprisonment for a period of 10 years;

        (b)  A fine of $250,000, or twice the gross pecuniary gain or twice the gross pecuniary loss resulting from defendant's conduct, whichever is greater;

*A. S.*
Defendant's
Initials

Lisa Green
May 24, 2017                              Re: Antoine E. Skaff
Page 2


    (c)   A term of supervised release of up to 3 years;

    (d)   A mandatory special assessment of $100 pursuant to 18
          U.S.C. § 3013; and

    (e)   An order of restitution pursuant to 18 U.S.C. §§ 3663A
          and 3664, or as otherwise set forth in this plea
          agreement.

    4.    **SPECIAL ASSESSMENT.**   Prior to the entry of a plea
pursuant to this plea agreement, Dr. Skaff will tender a check or
money order to the Clerk of the United States District Court for
$100, which check or money order shall indicate on its face the
name of defendant and the case number.   The sum received by the
Clerk will be applied toward the special assessment imposed by the
Court at sentencing.   Dr. Skaff will obtain a receipt of payment
from the Clerk and will tender a copy of such receipt to the United
States, to be filed with the Court as an attachment to this plea
agreement.   If Dr. Skaff fails to provide proof of payment of the
special assessment prior to or at the plea proceeding, the United
States will have the right to void this plea agreement.   In the
event this plea agreement becomes void after payment of the special
assessment, such sum shall be promptly returned to Dr. Skaff.

    5.    **RESTITUTION.** Notwithstanding the offense of conviction,
Dr. Skaff agrees that he owes restitution in the amount of $738,067
and agrees to pay such restitution, with interest as allowed by
law, to the fullest extent financially feasible.   In aid of
restitution, Dr. Skaff further agrees as follows:

    (a)   Dr. Skaff agrees to fully assist the United States in
          identifying and locating any assets to be applied toward
          restitution and to give signed, sworn statements and
          testimony concerning assets upon request of the United
          States.

    (b)   Dr. Skaff will fully complete and execute, under oath,

                                        _____
                                        Defendant's
                                        Initials

Lisa Green
May 24, 2017                              Re: Antoine E. Skaff
Page 3

     a Financial Statement and a Release of Financial
Information on forms supplied by the United States and
will return these completed forms to counsel for the
United States within seven calendar days from the date
of the signing of this plea agreement.

(c)   Dr. Skaff agrees not to dispose of, transfer or otherwise
encumber any real or personal property which he
currently owns or in which he holds an interest.

(d)   Dr. Skaff agrees to fully cooperate with the United
States in the liquidation of assets to be applied towards
restitution, to execute any and all documents necessary
to transfer title of any assets available to satisfy
restitution, to release any and all right, title and
interest he may have in and to such property, and waives
his right to exemptions under the Federal Debt
Collection Procedures Act upon levy against and the sale
of any such property.

(e)   Dr. Skaff agrees not to appeal any order of the District
Court imposing restitution unless the amount of
restitution imposed exceeds the amount set forth in this
plea agreement. However, nothing in this provision is
intended to preclude the Court from ordering Dr. Skaff
to pay a greater or lesser sum of restitution in
accordance with law.

    6.   **PAYMENT OF MONETARY PENALTIES.** Dr. Skaff agrees not to
object to the District Court ordering all monetary penalties
(including the special assessment, fine, court costs, and any
restitution that does not exceed the amount set forth in this plea
agreement) to be due and payable in full immediately and subject
to immediate enforcement by the United States. So long as the
monetary penalties are ordered to be due and payable in full
immediately, Dr. Skaff further agrees not to object to the District
Court imposing any schedule of payments as merely a minimum
schedule of payments and not the only method, nor a limitation on

                                                  _A. S._
                                                  Defendant's
                                                  Initials

Lisa Green
May 24, 2017                                  Re: Antoine E. Skaff
Page 4

the methods, available to the United States to enforce the judgment.

7. **COOPERATION.** Dr. Skaff will be forthright and truthful with this office and other law enforcement agencies with regard to all inquiries made pursuant to this agreement, and will give signed, sworn statements and grand jury and trial testimony upon request of the United States. In complying with this provision, Dr. Skaff may have counsel present except when appearing before a grand jury.

8. **USE IMMUNITY.** Unless this agreement becomes void due to a violation of any of its terms by Dr. Skaff, and except as expressly provided for in paragraph 11 below, nothing contained in any statement or testimony provided by him pursuant to this agreement, or any evidence developed therefrom, will be used against him, directly or indirectly, in any further criminal prosecutions or in determining the applicable guideline range under the Federal Sentencing Guidelines.

9. **LIMITATIONS ON IMMUNITY.** Nothing contained in this agreement restricts the use of information obtained by the United States from an independent, legitimate source, separate and apart from any information and testimony provided pursuant to this agreement, in determining the applicable guideline range or in prosecuting Dr. Skaff for any violations of federal or state laws. The United States reserves the right to prosecute Dr. Skaff for perjury or false statement if such a situation should occur pursuant to this agreement.

10. **STIPULATION OF FACTS AND WAIVER OF FED. R. EVID. 410.** The United States and Dr. Skaff stipulate and agree that the facts comprising the offense of conviction include the facts outlined in the "Stipulation of Facts," a copy of which is attached hereto as "Plea Agreement Exhibit B."

Dr. Skaff agrees that if he withdraws from this agreement, or this agreement is voided as a result of a breach of its terms by

_A. S._
Defendant's
Initials

Lisa Green
May 24, 2017                          Re: Antoine E. Skaff
Page 5

him, and he is subsequently tried for his conduct alleged in the information, as more specifically described in the Stipulation of Facts, the United States may use and introduce the Stipulation of Facts in the United States case-in-chief, in cross-examination of Dr. Skaff or of any of his witnesses, or in rebuttal of any testimony introduced by him or on his behalf. Dr. Skaff knowingly and voluntarily waives, see United States v. Mezzanatto, 513 U.S. 196 (1995), any right he has pursuant to Fed. R. Evid. 410 that would prohibit such use of the Stipulation of Facts.  If the Court does not accept the plea agreement through no fault of the defendant, or the Court declares the agreement void due to a breach of its terms by the United States, the Stipulation of Facts cannot be used by the United States.

The United States and Dr. Skaff understand and acknowledge that the Court is not bound by the Stipulation of Facts and that if some or all of the Stipulation of Facts is not accepted by the Court, the parties will not have the right to withdraw from the plea agreement.

11. **AGREEMENT ON SENTENCING GUIDELINES**. Based on the foregoing Stipulation of Facts, the United States and Dr. Skaff agree that the following provisions of the United States Sentencing Guidelines apply to this case.

| | |
|---|---|
| USSG §2B1.1 | |
| Base offense level | 6 |
| Loss greater than $550,000 | + 14 |
| | |
| USSG §3B1.3 | |
| Abuse of trust | + 2 |
| | |
| USSG §3C1.1 | |
| Obstruction | + 2 |
| | |
| Adjusted offense level | 24 |

The United States and Dr. Skaff acknowledge and understand

_____
A.S.
Defendant's
Initials

Lisa Green
May 24, 2017                              Re: Antoine E. Skaff
Page 6

that the Court and the Probation Office are not bound by the
parties' calculation of the United States Sentencing Guidelines
set forth above and that the parties shall not have the right to
withdraw from the plea agreement due to a disagreement with the
Court's calculation of the appropriate guideline range.

     12.  **WAIVER OF APPEAL AND COLLATERAL ATTACK**.  Dr. Skaff
knowingly and voluntarily waives his right to seek appellate review
of his conviction and of any sentence of imprisonment, fine, or
term of supervised release imposed by the District Court, or the
manner in which the sentence was determined, on any ground
whatsoever including any ground set forth in 18 U.S.C. § 3742(a),
except that the defendant may appeal any sentence that exceeds the
maximum penalty prescribed by statute.  The United States also
agrees to waive its right to appeal any sentence of imprisonment,
fine, or term of supervised release imposed by the District Court,
or the manner in which the sentence was determined, on any ground
whatsoever, including any ground set forth in 18 U.S.C. § 3742(b),
except that the United States may appeal any sentence that is below
the minimum penalty, if any, prescribed by statute.

     Dr. Skaff also knowingly and voluntarily waives the right to
challenge his guilty plea and conviction resulting from this plea
agreement, and any sentence imposed for the conviction, in any
collateral attack, including but not limited to a motion brought
under 28 U.S.C. § 2255.

     The waivers noted above shall not apply to a post-conviction
collateral attack or direct appeal based on a claim of ineffective
assistance of counsel.

     13.  **WAIVER OF FOIA AND PRIVACY RIGHT**.  Dr. Skaff knowingly
and voluntarily waives all rights, whether asserted directly or by
a representative, to request or receive from any department or
agency of the United States any records pertaining to the
investigation or prosecution of this case, including without any
limitation any records that may be sought under the Freedom of
Information Act (FOIA), 5 U.S.C. § 552, or the Privacy Act of 1974,

_____
                          Defendant's
                          Initials

Lisa Green
May 24, 2017                           Re: Antoine E. Skaff
Page 7


5 U.S.C. § 552a, following final disposition.

    14.  **FINAL DISPOSITION.**  The matter of sentencing is within the sole discretion of the Court. The United States has made no representations or promises as to a specific sentence.  The United States reserves the right to:

    (a)  Inform the Probation Office and the Court of all relevant facts and conduct;

    (b)  Present evidence and argument relevant to the factors enumerated in 18 U.S.C. § 3553(a);

    (c)  Respond to questions raised by the Court;

    (d)  Correct inaccuracies or inadequacies in the presentence report;

    (e)  Respond to statements made to the Court by or on behalf of Dr. Skaff;

    (f)  Advise the Court concerning the nature and extent of Dr. Skaff's cooperation; and

    (g)  Address the Court regarding the issue of Dr. Skaff's acceptance of responsibility.

    15.  **VOIDING OF AGREEMENT.**  If either the United States or Dr. Skaff violates the terms of this agreement, the other party will have the right to void this agreement. If the Court refuses to accept this agreement, it shall be void.

    16.  **ENTIRETY OF AGREEMENT.**  This written agreement constitutes the entire agreement between the United States and Dr. Skaff in this matter.  There are no agreements, understandings or recommendations as to any other pending or future charges against Dr. Skaff in any Court other than the United States District Court for the Southern District of West Virginia.

Defendant's
Initials

Lisa Green
May 24, 2017                    Re: Antoine E. Skaff
Page 8


        Acknowledged and agreed to on behalf of the United States:

                          CAROL A. CASTO
                          United States Attorney

                   By: _____

                          MEREDITH GEORGE THOMAS
                          Assistant United States Attorney


MGT/smw










                                              A.S.
                                        _____
                                          Defendant's
                                          Initials

Lisa Green
May 24, 2017                          Re: Antoine E. Skaff
Page 9


I hereby acknowledge by my initials at the bottom of each of the foregoing pages and by my signature on the last page of this nine-page agreement that I have read and carefully discussed every part of it with my attorney, that I understand the terms of this agreement, and that I voluntarily agree to those terms and conditions set forth in the agreement.  I further acknowledge that my attorney has advised me of my rights, possible defenses, the Sentencing Guideline provisions, and the consequences of entering into this agreement, that no promises or inducements have been made to me other than those in this agreement, and that no one has threatened me or forced me in any way to enter into this agreement. Finally, I am satisfied with the representation of my attorney in this matter.


_____          _____
Antoine E. Skaff                   Date Signed
Defendant

_____          _____
Lisa Green (#6899)                 Date Signed
Counsel for Defendant

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON


UNITED STATES OF AMERICA

v.                                    CRIMINAL NO. _____
                                      18 U.S.C. § 1347

ANTOINE E. SKAFF


I N F O R M A T I O N

The United States Attorney Charges:

The Scheme to Defraud

1.    From on or about January 3, 2011, and continuing through on or about August 31, 2016, at or near Charleston, Kanawha County, West Virginia, within the Southern District of West Virginia and elsewhere, defendant ANTOINE E. SKAFF did knowingly and willfully execute and attempt to execute a scheme and artifice to defraud, and to obtain money owned by and under the care and custody of the West Virginia Medicaid Program and West Virginia Medicaid's Managed Care Organizations by means of materially false and fraudulent pretenses, representations and promises, in connection with the delivery of and payment for health care benefits and services.


PLEA AGREEMENT EXHIBIT A

## Background

At all relevant times:

2.   Defendant ANTOINE E. SKAFF was a general practice dentist licensed to practice dentistry in the State of West Virginia. SKAFF's dental practice, Antoine E. Skaff, DDS Inc., was located in Kanawha City in Charleston, West Virginia. Defendant was the only licensed dentist who practiced in his office from at least January 1, 2011, through at least August 31, 2016.

3.   The West Virginia Medicaid Program ("Medicaid") or ("West Virginia Medicaid") is a state-administered health care program funded primarily by the United States government, which provides access to health care for certain low-income citizens who qualify under state guidelines. West Virginia Medicaid is a "health care benefit program" as defined in Title 18, United States Code, Subsection 24(b). West Virginia Medicaid is funded jointly by the State of West Virginia and The United States Department of Health and Human Services through the Centers for Medicare and Medicaid Services. Individuals who received benefits under West Virginia Medicaid are commonly referred to as Medicaid "beneficiaries" or "recipients." Those recipients whose providers are reimbursed on

2

per-service basis through West Virginia Medicaid via the State of West Virginia, as opposed to managed care entities, are Medicaid "fee-for-service" ("FFS") recipients.

4.     Under the managed care model, West Virginia Medicaid signed contracts with Managed Care Organizations ("MCOs"), which in turn enrolled qualifying recipients and provided medical services through their own networks of doctors.  In fiscal year 2014, West Virginia Medicaid began allowing dental services to be covered by MCOs. During the relevant period, the State contracted with four national health plans to provide services to recipients in its MCO programs: UniCare, Coventry Cares of WV, The Health Plan of the Upper Ohio Valley, and West Virginia Family Health. The MCOs are also health care benefit programs as defined by 18 U.S.C. § 24(b).

5.     Defendant ANTOINE E. SKAFF was enrolled as a provider for Medicaid and the Medicaid MCOs, and as a provider sought reimbursement for certain services rendered to recipients enrolled in Medicaid or a Medicaid MCO.

6.     Enrolled Medicaid and MCO providers submitted requests for reimbursement by means of a "claim." A claim contained information including the provider number, recipient's name and

identification number, date of service, and location of service. Claims submitted to Medicaid and Medicaid MCOs also included a Current Dental Terminology ("CDT") procedure code, which indicated the service provided to the recipient.

7.   Medicaid and Medicaid MCOs permitted providers to submit claims for reimbursement for a variety of CDT codes for the medically necessary extraction of teeth under certain circumstances. Medicaid and Medicaid MCOs varied their reimbursement rates depending on the complexity of the procedure involved. Medicaid and Medicaid MCOS required that claims for extractions include the tooth number in the claim. Permanent teeth are numbered 1 through 32.

8.   CDT Codes D7230 and D7220 are surgical procedures and only should be submitted on a claim when the tooth being extracted is impacted, which means that the tooth has not erupted through the gum into the mouth. Code D7230 only should be submitted on a claim when the tooth has broken through a portion of the bone encasing it in the jaw, but part of the crown of the tooth is still covered by bone. Code D7220 only should be submitted on a claim when the tooth is covered by soft tissue. A simple extraction, the extraction of an erupted tooth or exposed root with the dental

4

tools of forceps and elevators, should be submitted on a claim as Code D7140.

9.    Medicaid FFS and Medicaid MCOs reimbursed those codes in the following manner:

  a.    Code D7230 = $205 per tooth;

  b.    Code D7220 = $172 per tooth; and

  c.    Code D7140 = $80 per tooth.

<u>Manner and Means for Carrying out the Scheme</u>

10.    Defendant ANTOINE E. SKAFF purported to provide an array of dental services at his office in Kanawha City in Charleston, West Virginia. A considerable amount of the money Defendant ANTOINE E. SKAFF received from Medicaid FFS and Medicaid MCOs resulted from claims submissions for numerous adult Medicaid recipients for CDT Codes D7230 and D7220, surgical procedures to extract impacted teeth.

11.    Defendant ANTOINE E. SKAFF personally submitted his own claims and understood the CDT Codes relating to extracting teeth.

*Upcoding*

12.    Defendant ANTOINE E. SKAFF knew that Medicaid FFS and Medicaid MCOs reimbursed Code D7230 and Code D7220 at a substantially higher rate than a simple extraction coded under

5

D7140. Defendant ANTOINE E. SKAFF upcoded his claims, submitting false and inflated claims to Medicaid FFS and Medicaid MCOs for extractions of impacted teeth using CDT Codes D7230 and D7220, when, in fact, he only performed simple extractions on teeth that were not impacted. SKAFF knew that if the extractions were medically necessary, the extractions should have been coded as simple extractions using CDT Code D7140.

13.   For example, Defendant ANTOINE E. SKAFF submitted false and upcoded claims to Medicaid FFS for the extraction of Medicaid recipient L.E.'s teeth numbered 1, 2, 3, 4, 5, 6, 7, 8 ,9, 10, 11, 12, 13, 14, 15, 16, 18, 24, 25, 28, 29 with a date of service of January 31, 2014.  For each of these claims, SKAFF asserted that he performed a D7220, the extraction of an impacted tooth covered by soft tissue. On February 28, 2014, Medicaid FFS paid SKAFF $172.00 for each extraction.  As SKAFF knew, those teeth were not impacted and thus the extractions should have been billed using Code D7140.

14.   On claims for adult dental services with dates of service between January 3, 2011, through August 31, 2016, defendant ANTOINE E. SKAFF submitted approximately $1.32 million in false and inflated claims to Medicaid and Medicaid MCOs for purported

surgical extractions of impacted teeth. Medicaid and Medicaid MCOs paid SKAFF approximately $1.28 million for those false and inflated claims.

*Double Billings*

15.   In furtherance of his scheme, Defendant ANTOINE E. SKAFF also submitted second false billings to Medicaid MCOs for extracting recipients' teeth when Medicaid FFS previously paid him for extracting the same teeth, as he knew.

16.   For example, defendant ANTOINE E. SKAFF submitted claims to Medicaid FFS for the extraction of K.B.'s teeth numbered 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, and 14 with a date of service of February 7, 2013. For these extractions, he used either CDT Code D7220 or Code D7230.  On March 1, 2013, Medicaid FFS paid SKAFF $2,295.00 for those extractions.

17.   Later, after K.B.'s Medicaid coverage changed from Medicaid FFS to Unicare, a Medicaid MCO, defendant ANTOINE E. SKAFF submitted second, false claims to UniCare.  SKAFF submitted claims for the surgical extraction of K.B.'s same teeth pursuant to CDT Code 7220, with a date of service of November 26, 2014. On December 26, 2014, UniCare paid defendant ANTOINE E. SKAFF $2,064.00 for the false double billing.

7

18.  On claims for adult dental services with dates of service between approximately March 1, 2014, through August 31, 2016, SKAFF falsely submitted claims to Medicaid MCOs for approximately 346 extractions for which he had already been paid by Medicaid FFS. These false claims amounted to approximately $60,837 in false double billings.  Medicaid MCOs paid SKAFF approximately $56,930 for the false double billings.

### Billing Executing the Scheme

19.  On or about November 26, 2014, in Charleston, Kanawha County, West Virginia, in the Southern District of West Virginia, defendant ANTOINE E. SKAFF knowingly and willfully executed and attempted to execute the above-described scheme and artifice to defraud by submitting and causing a fraudulent claim for CDT Code D7220 to be submitted to UniCare, a health care benefit program and West Virginia Medicaid Managed Care Organization, relating to services allegedly provided to Medicaid recipient K.B. That is, SKAFF submitted a claim to UniCare for performing the surgical removal of impacted tooth number 5 of K.B., pursuant to CDT Code D7220, purportedly performed on November 26, 2014, when in fact, as SKAFF well knew, SKAFF had not surgically removed that tooth on the date of service indicated and had previously billed and been

8

paid by Medicaid FFS for the extraction of the same tooth. However, SKAFF received approximately $172.00 from UniCare for the extraction of K.B.'s tooth number 5 on approximately December 26, 2014.

In violation of Title 18, United States Code, Section 1347.


UNITED STATES OF AMERICA

CAROL A. CASTO
United States Attorney


By: _____
MEREDITH GEORGE THOMAS
Assistant United States Attorney

9

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON


UNITED STATES OF AMERICA


v.                                    CRIMINAL NO. _____


ANTOINE E. SKAFF


### STIPULATION OF FACTS

The United States and ANTOINE E. SKAFF (hereinafter "Dr. Skaff") stipulate and agree that the facts comprising the offense of conviction in the single-count Information in the Southern District of West Virginia include the following:

### Background

Antoine E. Skaff was a general practice dentist licensed to practice dentistry in the State of West Virginia.  Dr. Skaff's dental practice was located in Kanawha City, in Charleston, West Virginia. Dr. Skaff was the only licensed dentist who practiced in his office from at least January 1, 2011, through at least August 31, 2016.

Dr. Skaff was an enrolled West Virginia Medicaid provider. The West Virginia Medicaid Program is a state administered healthcare program funded jointly by the United States government and the State of West Virginia, which provides certain healthcare services for indigent and low-income citizens who qualify under state guidelines. West Virginia Medicaid is a "health care benefit program" as defined in 18 U.S.C. § 24(b).

Traditionally, all Medicaid recipients are served through a fee-for-service ("FFS") delivery system where health care providers are paid by the Medicaid for each service and/or procedure provided. Under the FFS model, a recipient seeks services from a Medicaid provider, who then bills the State of West Virginia for the services rendered. The State then pays the provider directly for the service. However, to reduce Medicaid costs in West Virginia, the State began transferring recipients from traditional Medicaid FFS to Managed Care Organizations ("MCOs").


**PLEA AGREEMENT EXHIBIT B**

Under managed care, West Virginia Medicaid signed contracts with MCOs, which provided medical services through their own networks of doctors. The State paid each MCO a fixed fee per member per month for each Medicaid patient and the MCO reimbursed the provider for the patient's care.

In fiscal year 2014, the State expanded the range of services covered by MCOs to include dental services. During the relevant period, the State contracted with four national health plans to provide services to recipients in its MCO programs: UniCare, Coventry Cares of WV, The Health Plan of the Upper Ohio Valley, and West Virginia Family Health. Recipients typically enrolled with one of the four MCOs. The MCOs are also health care benefit programs as defined by 18 U.S.C. § 24(b).

As an enrolled Medicaid provider, Dr. Skaff sought reimbursement from Medicaid FFS for services he purportedly provided to Medicaid recipients. Enrolled providers agreed to abide by all applicable Medicaid policies and procedures and agreed to take responsibility for all claims for medical services submitted to Medicaid FFS for reimbursement.

To receive reimbursements from the MCOs, medical providers had to have contracts with individual MCOs. Dr. Skaff also became a contractor with the MCOs.

Enrolled Medicaid and MCO providers submitted requests for reimbursement from Medicaid FFS or Medicaid MCOs, depending on the recipient's coverage, by means of a claim. Claims included the provider number, date of service, location of service (such as at an office or a homeless shelter), and recipient's identifiers. Claims also included a Current Dental Terminology ("CDT") procedure code, which indicated the service provided to the recipient. Medicaid and Medicaid MCOS required that claims for certain dental procedures, such as tooth extractions, include the tooth number in the claim.

To receive reimbursement, providers may only bill an extraction code when a tooth is removed from the mouth. CDT Codes D7230 and D7220, surgical procedures, should only be billed when the tooth being extracted is impacted, which means that the tooth has not erupted through the gum into the mouth. Typically, in adult mouths, only wisdom teeth are impacted. Code D7230 should be billed when the tooth has broken through a portion of the bone encasing it in the jaw, but has not protruded completely. Code D7220 should be billed when the tooth is covered by soft tissue. CDT Codes D7230 and D7220 are the second and third highest reimbursing extraction

code in the West Virginia FFS and MCO Programs. Medicaid and Medicaid MCOs reimburse Code D7230 at $205 per tooth and Code D7220 at $172 per tooth.

A simple extraction, the extraction of an erupted tooth or exposed root with the dental tools of forceps and elevators, should be billed with Code D7140. Medicaid and Medicaid MCOs reimburse Code D7140 at $80 per tooth.

As a dental services provider, Dr. Skaff personally submitted claims to Medicaid and Medicaid MCOs. Dr. Skaff understood the CDT Codes relating to the extraction of teeth.

Dr. Skaff's Medicaid and MCO payments typically were deposited into his business bank account at City National Bank either via direct deposit or deposited check. Dr. Skaff was the only signatory on the account.

### Inflated False Billings: Upcoding

Dr. Skaff falsely inflated his adult tooth extraction billings by indicating he performed a more complex procedure than what he actually performed. By falsely inflating his billings, also known as upcoding, he received a substantially higher amount of reimbursement from Medicaid and Medicaid MCOs.

Many of Dr. Skaff's claims for adult dental services submitted to Medicaid and the Medicaid MCOs with dates of service between January 3, 2011, through August 31, 2016, were for surgical extraction CDT Codes D7220 and D7230 and related charges.

Dr. Skaff habitually and knowingly submitted false and upcoded extraction claims to Medicaid and Medicaid MCOs. He falsely billed for extractions of impacted teeth under Codes D7220 and D7230, when in fact the extractions that Dr. Skaff performed were on teeth that Dr. Skaff knew were not impacted and were instead fully erupted into the patients' mouths. Those extractions, as Dr. Skaff knew, were simple extractions. Dr. Skaff also knew that he should have billed those extractions with Code D7140 if the extractions were medically necessary and actually performed.

For example, Dr. Skaff submitted false and upcoded claims to Medicaid FFS for the extraction of Medicaid recipient L.M.'s teeth numbered 1, 2, 3, 4, 5, 6, 7, 8 ,9, 10, 11, 12, 13, 14, 15, 16, 18, 24, 25, 28, 29 with a date of service of January 31, 2014. For each of these claims, he asserted that he performed a D7220,

the extraction of an impacted tooth covered by soft tissue. However, Dr. Skaff's patient chart indicated that L.M. had loose teeth, not impacted teeth. The chart also noted that the teeth were extracted uneventfully. On February 28, 2014, Medicaid FFS paid Dr. Skaff $172.00 for each extraction. As Dr. Skaff knew, those teeth were not impacted and the extractions should have been billed using Code D7140 if the extractions were medically necessary. Dr. Skaff knowingly upcoded the claims and was not entitled to reimbursement for Code D7220 for the extraction of those teeth.

For claims for adult dental services with dates of service between approximately January 3, 2011, through August 31, 2016, Dr. Skaff falsely billed at least 7,490 instances of D7220 and D7230 to Medicaid and Medicaid MCOs in the amount of approximately $1,321,895.00. Dr. Skaff received approximately $1,277,347.00 for the false billings. If those extractions were medically necessary and actually performed, Dr. Skaff was entitled to be paid $80 per tooth as a simple extraction under D7140, amounting to $599,200. The actual loss to Medicaid and Medicaid MCOs was $678,147.

## Double False Billings

Dr. Skaff also knowingly submitted false and bogus claims to Medicaid MCOs for extracting teeth when he knew he had already billed and received payment for extractions of the same teeth from Medicaid FFS. For many of these false double billings, Dr. Skaff changed the location of the service in the claim to indicate that he performed the second extraction of the same tooth at a homeless shelter. At times, he also changed the extraction procedure code, such as changing the code from a D7230 to a D7220.

For example, defendant Dr. Skaff submitted claims to Medicaid FFS for the extraction of K.B.'s teeth numbered 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, and 14 with a February 7, 2013 date of service. For these extractions, he used CDT Code D7220 for five teeth and Code D7230 for seven teeth. At that time, K.B. had Medicaid FFS coverage. Medicaid FFS paid Dr. Skaff $2,295.00 for those extractions on March 1, 2013.

Later, Dr. Skaff submitted second false claim to UniCare, a Medicaid MCO, for the surgical extraction of the same teeth of K.B. pursuant to CDT Code 7220, with a date of service of November 26, 2014. On December 26, 2014, UniCare paid Dr. Skaff $2,064.00 for the false double billings. Dr. Skaff knew he had already removed those teeth and knowingly double-billed UniCare for the extractions.

On claims for adult dental services with dates of service between approximately March 1, 2014, through August 31, 2016, Dr. Skaff falsely billed Medicaid MCOs for at least 346 extractions for which he had already been paid by Medicaid, resulting in approximately $60,837 billed to Medicaid MCOs and approximately $56,930 paid to Dr. Skaff. He was not entitled to those reimbursements.

## **Obstruction**

Dr. Skaff attempted to obstruct the investigation into his double billing by altering charts requested by a Medicaid MCO auditor. Dr. Skaff billed Medicaid FFS for extractions of D.M.'s teeth in March through August of 2015. He then submitted false double billings to West Virginia Family Health, a Medicaid MCO, for the removal of the same teeth in September 2015.

In an attempt to hide his double billings from the Medicaid MCO, Dr. Skaff altered the patient intake sheet to indicate a September 2015 date, rather than the March 2015 date on the original intake sheet. Dr. Skaff also changed the patient chart to reflect that he removed the teeth on the dates that he claimed he had removed them in the late MCO billings, rather than the earlier Medicaid FFS billings.

This Stipulation of Facts does not contain each and every fact known to defendant and to the United States concerning his involvement and the involvement of others in the charges set forth in the Information.

Stipulated and agreed to:

_____          6-2-17
ANTOINE E. SKAFF                          Date
Defendant

_____          6/2/2019
LISA GREEN #580 for                       Date
Counsel for Defendant

_____          7/3/17
MEREDITH GEORGE THOMAS                    Date
Assistant United States Attorney

5